Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| GP STATEGIES CORPORATION<br><br>Apelados<br><br>v.<br><br><br>MUNICIPIO DE LOIZA Y JULIA NAZARIO FUENTES, EN SU CAPACIDAD DE ALCALDESA DEL MUNICIPIO DE LOIZA<br><br>Apelantes | KLAN202301127 | Apelación Procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br><br>Civil Núm.:<br>CA2021CV01731<br><br><br>Sobre:<br>Cobro de Dinero; Incumplimiento de Contrato; Daños Contractuales |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de enero de 2024.

### I.

El 15 de diciembre de 2024, el Municipio de Loíza (Municipio de Loíza o parte apelante) presentó una *Apelación* en la que solicitó que revoquemos una *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI o foro primario), el 1 de septiembre de 2023, notificada y archivada en autos el 6 de septiembre de 2023.[1] En el dictamen, el TPI ordenó a la parte apelante a pagar trescientos sesenta y nueve mil, ciento veintiséis dólares ($369,126.00) a GP Strategies Corporation (GP Strategies o parte apelada), más el interés legal que acumule desde la fecha del dictamen, como determinación parcial en el pleito promovido por la parte apelada en reclamación de cobro de dinero, incumplimiento

---

[1] Apéndice de la *Apelación*, Anejo VIII, págs. 863-884.

de contrato y daños contractuales. Determinó que no existía controversia de hechos respecto a dieciséis (16) facturas presentadas por GP Strategies, las declaró vencidas, líquidas y exigibles y, por ello, ordenó su pago.

El 4 de enero de 2024, GP Strategies radicó una *Moción solicitando remedios bajo la Regla 16 (E) del Reglamento del Tribunal de Apelaciones* en la que solicitó una orden requiriéndole al Municipio de Loíza que sometiera un apéndice que cumpliese con la Regla 16 (E) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 16 (E). Según esbozó, la parte apelante presentó un apéndice incompleto, el cual omitió los veintitrés (23) anejos de la moción de sentencia sumaria que provocó la *Sentencia Parcial*, una *Moción conjunta en cumplimiento de orden* en la que las partes estipularon los hechos sobre los cuales no había controversia, la *Réplica a documento presentado por el Municipio de Loíza en oposición a la Moción de Sentencia Parcial* radicada por la parte apelada, la notificación del archivo en autos del dictamen apelado y los treinta y nueve (39) anejos de la *Demanda*.

El 9 de enero de 2024, emitimos una *Resolución* en la que le concedimos a la parte apelada hasta el 16 de enero de 2024 para presentar su alegato en oposición.

El 10 de enero de 2024, emitimos una *Resolución* en la que le concedimos diez (10) días a la parte apelante para expresarse respecto a lo planteado por GP Strategies sobre el apéndice de la *Apelación*.

El 16 de enero de 2024, GP Strategies presentó un *Alegato de GP Strategies Corporation en oposición a la apelación* en el que sostuvo que el TPI no incidió en el error señalado por el Municipio de Loíza y solicitó que confirmemos la *Sentencia Parcial* apelada. Como apéndice del escrito, sometió aquellos documentos que, según reclamó previamente, fueron excluidos del *Apéndice de la Apelación*.

El 22 de enero de 2024, el Municipio de Loíza radicó una *Moción en cumplimineto (sic) de orden y Réplica a Moción solicitando remedios bajo la Regla 16 (E) del Reglamento del Tribunal de Apelaciones y autorización para presentar apéndice en formato digital* en cumplimiento de la *Resolución* emitida el 10 de enero de 2024. En la moción, la parte apelante aceptó lo alegado por la parte apelada y explicó que, por error o inadvertencia, no incluyó los documentos señalados por GP Strategies como omitidos. En consecuencia, sometió el apéndice de la *Apelación* corregido en formato digital.

El 24 de enero de 2024, emitimos una *Resolución* en la que autorizamos la presentación de las copias del apéndice en formato digital.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y, en adelante, pormenorizamos los hechos procesales atinentes a la *Apelación*.

**II.**

El caso de marras tiene su génesis el 9 de julio de 2021 cuando GP Strategies presentó una *Demanda* en cobro de dinero, incumplimiento de contrato y daños contractuales en contra del Municipio de Loíza.[2] En la *Demanda*, la parte apelada reclamó que el Municipio de Loíza le adeudaba un millón, trescientos noventa y nueve mil, quinientos dos dólares con cincuenta y siete centavos ($1,397,502.57) por concepto de servicios prestados en virtud de un contrato de servicios profesionales y evidenciados por treinta y cuatro (34) facturas vencidas y no pagadas.

El 2 de noviembre de 2023, el Municipio de Loíza presentó una *Contestación a la Demanda* en la que negó la mayoría de las alegaciones de la reclamación.[3]

---

[2] Íd., Anejo I, págs. 1-577.
[3] Íd., Anejo II, págs. 578-581.

El 9 de diciembre de 2021, GP Strategies le notificó al Municipio de Loíza el *Primer pliego de interrogatorios, requerimiento de admisiones y solicitud de producción de documentos* en el que solicitó que la parte apelante precisara qué partidas objetaba de cada una de las facturas adeudadas.[4] En concreto, el documento requería lo siguiente:

> "15. Indique cuál es la razón específica por la que el Municipio no ha pagado las facturas pendientes. Deberá brindar su contestación para cada una de las facturas pendientes. En caso de que cuestione alguna partida, deberá especificar cuál es la partida cuestionada".[5]

El 25 de febrero de 2022, el Municipio de Loíza notificó su contestación bajo juramento al *Primer pliego de interrogatorios, requerimiento de admisiones y solicitud de producción de documentos*, suscrita por el Director de la Oficina de Programas Federales de la municipalidad, el señor Luis Daniel Pizarro Osorio (señor Pizarro Osorio).[6] Sobre el párrafo número 15 del requerimiento, expresó:

> "Las facturas que no han sido pagadas es por que [sic] no han sido aprobadas. En cuanto a las partidas que se cuestionan se producirá documentos especificando las partidas".[7]

En consecuencia, la parte apelada incluyó un *Análisis de Facturas GP Strategies*, el cual contenía una tabla de todas las facturas reclamadas en la *Demanda*, el total adeudado, el cargo disputado y los comentarios del Municipio de Loíza respecto a cada una. Según surge del documento, la parte apelante admitió que no tenía observaciones respecto a dieciséis (16) de las treinta y cuatro (34) facturas sometidas por GP Strategies, cuya suma ascendía a $369,126.00. En específico, la parte apelante incluyó "sin observaciones" en las facturas 10, 15, 18, 19, 20, 21, 22, 24, 25, 26, 29, 30, 31, 32, 33 y 34.

---

[4] Íd., Anejo III, págs. 592-597.
[5] Íd., pág. 595.
[6] Íd., págs. 598-604.
[7] Íd., pág. 600.

El 24 de marzo de 2023, GP Strategies radicó una *Moción para solicitar Sentencia Sumaria Parcial* en la que, basándose en el *Análisis de Facturas GP Strategies*, solicitó que el TPI dictara sentencia ordenando al Municipio de Loíza a pagar la suma de las dieciséis (16) facturas vencidas sobre las cuales no había controversia al no ser objetadas.[8] Según arguyó, dada la admisión de la parte apelante, no existía controversia en cuanto a la suma por concepto de las facturas no objetadas y, por ello, constituía una deuda vencida, así como líquida, cierta y determinada, pudiéndose exigir su cumplimiento. Junto a su solicitud, la parte apelada incluyó 23 anejos, entre los que figuraron: (1) la contestación del Municipio de Loíza al *Primer pliego de interrogatorios, requerimiento de admisiones y solicitud de producción de documentos*; (2) las dieciséis (16) facturas no objetadas; (3) el contrato de servicios profesionales suscrito por ambas partes; y (4) cuatro *Task Orders*, emitidos por las partes durante la vigencia del acuerdo.

El 2 de mayo de 2023, el Municipio de Loíza presentó una *Moción en oposición a Sentencia Sumaria Parcial* en la que solicitó que el foro primario declarara No Ha Lugar la solicitud de sentencia sumaria promovida por GP Strategies.[9] En suma, planteó que existía controversia en cuanto a las dieciséis (16) facturas, así como la procedencia de la reclamación, la cuantía del cobro de dinero, la corrección de las facturas y la cantidad que había sido pagada por las primeras tres facturas emitidas. Para demostrar la pretendida controversia, anejó una alegada declaración jurada de un oficial administrativo del Municipio de Loíza, el señor Julio Rafael Pérez Maysonet (señor Pérez Maysonet), con fecha del 1 de mayo de 2023, la cual contaba con la dación de fe del Notario Ebenecer López Ruyo,

---

[8] Íd., págs. 582-792.
[9] Íd., Anejo V, págs. 801-829.

pero en la que no constaba la firma del declarante.[10] Según dicho escrito, en enero del 2023, el señor Pérez Maysonet investigó varias de las facturas y se percató que en el documento *Análisis de Facturas GP Strategies* se había expresado que no se tenían observaciones, lo cual le sorprendió, toda vez que el trabajo descrito en ellas había sido realizado por él y no por GP Strategies. Por esa razón, disputaba las facturas de julio, agosto, septiembre y octubre de 2020; es decir, las últimas cuatro facturas. Además, la parte apelante acompañó su oposición con un reporte de inspección y una hoja de registros de entrada. También, alegó que el *Análisis de Facturas GP Strategies* solo mencionaba algunas observaciones sobre las facturas, pero en ningún momento decía que no fueron objetadas. Asimismo, planteó que el documento de impugnación de las partidas, anunciado en la contestación al pliego de interrogatorios, estaba trabajándose al interior del Municipio de Loíza.

Ese mismo día, el Municipio de Loíza radicó una *Moción aclararatoria [sic] y para corregir presentación de archivos* en la que se disculpó por omitir varios archivos en su oposición a la *Moción para solicitar Sentencia Sumaria Parcial* y, en consecuencia, los sometió junto al escrito.[11] Entre los documentos, incluyó un desglose, una carta del 11 de febrero de 2020, unos correos electrónicos del 11 de febrero de 2021 y la declaración del señor Pérez Maysonet con sus propios anejos. En los anejos de la declaración, incluyó una tabla que solo hacía referencia a cuatro (4) de las dieciséis (16) facturas presentadas por GP Strategies.

Más tarde el mismo día, el TPI emitió una *Orden* en la que le ordenó a las partes a sostener dentro de treinta (30) días una reunión para estipular los hechos materiales que no estaban en

---

[10] Íd., págs. 812-813.
[11] Íd., Anejo VI, págs. 830-858.

controversia.[12] También, les ordenó consignar dichas gestiones en una moción conjunta a ser presentada dentro de veinte (20) días a partir de la reunión.

El 12 de mayo de 2023, GP Strategies presentó una *Réplica a documento presentado por el Municipio de Loíza en oposición a Moción de Sentencia Sumaria Parcial* en la que reiteró su solicitud de sentencia sumaria parcial.[13] En suma, arguyó que la oposición del Municipio de Loíza fue radicada tardíamente, que la declaración del señor Pérez Maysonet carecía de valor probatorio y que los hechos promovidos como incontrovertidos no fueron refutados. Además, adujo que el contenido del documento tampoco representó una oposición a los hechos materiales establecidos en la *Moción para solicitar Sentencia Sumaria Parcial*. Al igual, planteó que la moción no cumplía con los requisitos impuestos por la Regla 36.3 (b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b).

El 26 de julio de 2023, las partes sometieron una *Moción conjunta en cumplimiento de orden* en la que estipularon diez (10) hechos materiales que no están en controversia y cada una formuló su versión de otros hechos incontrovertidos y los fundamentos para ello, desde su perspectiva.[14] En adición, cada parte esbozó las razones por las cuales no aceptaba los hechos no controvertidos según propuestos por la otra.

Ese mismo día, GP Strategies radicó una *Moción aclaratoria y en oposición a solicitud del Municipio para suplementar oposición a solicitud de Sentencia Parcial* en la que solicitó que el TPI denegara una petición del Municipio de Loíza de tiempo adicional para suplementar la oposición, que separara unas controversias respecto al descubrimiento de prueba y que dictara la Sentencia Sumaria

---

[12] Entrada Núm. 59 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[13] Apéndice de la *Apelación*, Anejo XIV, págs. 925-937.
[14] Íd., Anejo XV, págs. 938-981.

Parcial ordenando el pago de las facturas que no estaban en controversia.[15]

El 1 de septiembre de 2023, el TPI emitió la *Sentencia Parcial* apelada en la que determinó que el Municipio de Loíza no demostró que existía una controversia real en cuanto a la exigibilidad de las dieciséis (16) facturas y, por consiguiente, le ordenó a pagar a GP Strategies la cantidad de $369,126.00, más el interés legal correspondiente desde la fecha de la sentencia hasta su pago.[16] El foro primario dispuso que no existían controversias sobre los siguientes hechos materiales:

1. GP Strategies y el Municipio de Loíza otorgaron el Contrato Núm 2019-000099. Luego otorgaron las siguientes enmiendas: la Enmienda 2019-000099-A, la Enmienda 2019-000099-B, la Enmienda 2019-000099-C y la Enmienda 2019-000099-D (en adelante "el contrato" o "los contratos"), para que GP Strategies le asesorara en el proceso de asegurar fondos para la reconstrucción y reparación de los daños sufridos por las propiedades del Municipio tras el paso del huracán María. Los contratos fueron debidamente registrados ante el Contralor de Puerto Rico y son contratos válidos.
2. GP Strategies sometió al Municipio treinta y cuatro (34) facturas por trabajos realizados en virtud del Contrato Núm 2019-000099 y sus enmiendas.
3. El contrato suscrito entre las partes establece en su inciso 6.1 que GP Strategies sería compensado por los servicios y gastos según aprobados por el contrato, y que presentaría facturas mensuales con el detalle del trabajo realizado y los gastos incurridos. La base de la compensación se encontraba establecida en el Exhibit C del contrato, el cual fue anejado a la demanda y a la moción de sentencia sumaria parcial.

   El inciso 6.1 establece:
   > 6.1 Invoices: GP STRATEGIES will be compensated for the Services and approved expenses, as set forth in this Section 6, and applicable amendments. Unless otherwise provided, GP STRATEGIES will invoice MUNICIPALITY on a monthly basis for the Services and approved expenses for the immediately preceding month. Each invoice must indicate the Services performed and expenses incurred, and reference either MUNICIPALITY's purchase order or Project reference number. Each invoice shall detail the matters handled and the time dedicated to the same, Services will be quantified at a unit price basis for specific positions listed in Exhibit C of this Contract. Positions and Rates will not be changed without a contract amendment.

4. El inciso 6.3 del contrato suscrito entre las partes, en síntesis, establecía la forma de pago de las facturas. El representante autorizado del Municipio revisaría cada factura, y de determinar que las mismas cumplían con las regulaciones y guías federales las aprobaría para pago. El Municipio emitiría el pago de cada factura dentro de los

---

[15] Íd., Anejo VII, págs. 859-862.
[16] Íd., Anejo VIII, págs. 863-884. Notificada y archivada en autos el 6 de septiembre de 2023.

treinta (30) días a partir de su aprobación. En caso de tener alguna objeción de buena fe a alguna factura, el Municipio debía emitir el pago de la porción no objetada; y notificaría a GP Strategies la objeción levantada reteniendo el pago de esa porción hasta tanto las partes resolvieran la disputa.

El inciso 6.3 del contrato indica:

6.3 Payment: An authorized representative of MUNICIPALITY will review each invoice and, if adequate and proven to be compliant with FEMA laws, regulations, and eligibility guidelines, will approve and process its payment. MUNICIPALITY will pay GP STRATEGIES within thirty (30) days after its approval of GP STRATEGIES' invoice; provided, however that in the event that MUNICIPALITY, in good faith, disputes any portion of the charges reflected on the invoice, MUNICIPALITY will notify GP STRATEGIES of the dispute and may withhold payment on such portion until the parties have resolved the dispute...

5. El 9 de diciembre de 2021, como parte del descubrimiento de prueba en este caso, GP Strategies le notificó al Municipio el *Primer Pliego de Interrogatorios, Requerimiento de Admisiones y Solicitud de Producción de Documentos* ("Primer Pliego de Interrogatorios").

6. El 25 de febrero de 2022, la representación legal del Municipio de Loíza le notificó a GP Strategies la Contestación al "Primer Pliego de Interrogatorios" juramentada por el señor Luis Daniel Pizarro Osorio, el entonces Director de Programas Federales del Municipio.

7. En la Contestación a la pregunta número 15 del "Primer Pliego de Interrogatorios", el Municipio de Loíza contestó: "Las facturas que no han sido pagadas es por qué no han sido aprobadas. En cuanto a las partidas que se cuestionan se producirá documento especificando las partidas" (sic).

8. En respuesta a la pregunta número 23 del "Primer Pliego de Interrogatorios" respecto a qué facturas no se recibieron previo a la presentación de la demanda, el Municipio contestó: "Ninguna, según mi conocimiento todas las desglosadas en la Demanda fueron recibidas previo a la radicación de la Demanda". *Id.*

9. Junto a la Contestación al "Primer Pliego de Interrogatorios", el Municipio de Loíza produjo un documento titulado "Análisis de Facturas GP Strategies".

10. El "Análisis de Facturas GP Strategies" producido por el Municipio bajo juramento el 25 de febrero de 2022, cuestiona alguna de las facturas reclamadas en la demanda. No obstante, demuestra que el Municipio no objetó ni impugnó porción alguna de las facturas identificadas en dicho documento con los números 10, 15, 18, 19, 20, 21, 22, 24, 25, 26, 29, 30, 31, 32, 33 y 34. Respecto a estas facturas, el Municipio las señaló de manera específica como: "Sin observaciones".

11. El expediente ante este tribunal demuestra que no existe controversia en que la relación de facturas presentada por la parte demandante en su Moción Para Solicitar Sentencia Sumaria Parcial muestra correctamente la relación entre las facturas no objetadas según identificadas por el Municipio en el "Análisis de Facturas GP Strategies", e identificadas por GP Strategies en la Moción Para Solicitar Sentencia Sumaria Parcial, según se muestra a continuación:

| Núm. de Factura en Análisis de Factura GP Strategies producido por el | Número de Factura según emitida por GP Strategies | Mes/año facturado | Cuantía de la Factura | Alegación de la Demanda en la que se hace referencia a la Factura | Exhibit de la Moción de Sentencia Sumaria Parcial |
|---|---|---|---|---|---|

| Municipio de Loíza | | | | | |
|---|---|---|---|---|---|
| 10 | 1000117709 | Junio 2019 | $10,997 | 24 | Exhibit 3 |
| 15 | 1000126069 | Noviembre 2019 | $18,376 | 29 | Exhibit 4 |
| 18 | 1000127435 | Diciembre 2019 | $15,664.50 | 32 | Exhibit 5 |
| 19 | 1000129518 | Enero 2020 | $113,767.70 | 33 | Exhibit 6 |
| 20 | 1000129532 | Enero 2020 | $3,294 | 34 | Exhibit 7 |
| 21 | 1000130532 | Febrero 2020 | $15,948.24 | 35 | Exhibit 8 |
| 22 | 1000130592 | Febrero 2020 | $243.51[17] | 36 | Exhibit 9 |
| 24 | 1000138699M | Marzo 2020 | $64,880.90 | 47 | Exhibit 10 |
| 25 | 1000133661 | Abril 2020 | $11,161.89 | 38 | Exhibit 11 |
| 26 | 1000138699Apr | Abril 2020 | $36,289.88 | 45 | Exhibit 12 |
| 29 | 1000138699May | Mayo 2020 | $23,305.90 | 48 | Exhibit 13 |
| 30 | 1000136200 | Junio 2020 | $25,888.50 | 40 | Exhibit 14 |
| 31 | 1000137315 | Julio 2020 | $4,148 | 41 | Exhibit 15 |
| 32 | 1000140063 | Agosto 2020 | $11,540.75 | 43 | Exhibit 16 |
| 33 | 1000140062 | Septiembre 2020 | $11,816 | 42 | Exhibit 17 |
| 34 | 1000140480 | Octubre 2020 | $1,803.50 | 44 | Exhibit 18 |

12. Las facturas no objetadas por el Municipio suman un total equivalente a $369,126.00

13. No surge del expediente del tribunal que el Municipio haya solicitado una segunda prórroga para establecer su oposición a la Moción de Sentencia Sumaria Parcial.

14. El 2 de mayo de 2023 a las 12:01:49 am, el Municipio presentó el documento "Moción en Oposición a Sentencia Sumaria Parcial", acompañado de tres (3) anejos.

15. Posteriormente, el 2 de mayo de 2023, a las 2:29:42 am de ese mismo día, el Municipio presentó un documento titulado "Moción Aclaratoria para Corregir Presentación de Archivos" acompañado de cuatro (4) anejos. El último anejo estaba dividido en tres partes. El Municipio completó su "oposición", con los anejos correctos, el 2 de mayo de 2023[18]. Lo cual constituye una presentación tardía del escrito en oposición.

16. El Municipio, según aclarados e incluidos en su *Moción Aclaratoria*, sustenta su oposición en cuatro documentos presentados como anejos, a saber:

    a. Anejo 1: es un desglose de alegados pagos del Municipio a GP Strategies. Este documento ni la moción presentada por el Municipio establecen relación alguna con las dieciséis facturas objeto de la Moción de Sentencia Sumaria Parcial.

---

[17] Sobre este número, el TPI consignó lo siguiente en una nota al calce: "La cuantía identificad[a] por el Municipio de Loíza en esta factura es de $234.51, se considera un error gramatical".

[18] En cuanto a este hecho, el TPI expresó lo siguiente en una nota al calce: "El Municipio hizo referencia a la presentación del documento "correcto" de Moción en Oposición a Sentencia Sumaria Parcial como, Anejo A de su moción aclaratoria, pero no lo presentó".

b. Anejo 2: Una carta indicando que en el 2020 el Municipio recibió "fondos correspondientes al DR-4339 FEMA PW1021-RFR5750 de los Direct Administrative Costs (DAC) de las facturas de GP Strategies sometidas para reembolso en un Request for Reimbursement (RFR) que suman $181,041.34". Este documento tampoco establece relación con, o presenta una controversia sobre las facturas que se intentan cobrar en la Moción de Sentencia Sumaria Parcial.

c. Anejo 3: Unos correos electrónicos fechados en el año 2021 donde se indica que hubo reuniones para discutir facturas que estaban pendientes para pago. Este documento tampoco presenta una contradicción material, ni hace referencia a las facturas objeto de la Moción de Sentencia Sumaria Parcial.

d. Anejo 4: una declaración a nombre de un empleado del Municipio identificado como Julio Rafael Perez Maysonet. La declaración a nombre del empleado del Municipio identificado como Julio Rafael Perez Maysonet no está firmada3. Por lo cual no constituye un documento jurado y suscrito ante un notario. Esta declaración contiene anejos que se discutirán más adelante en esta sentencia.

17. La declaración presentada como Anejo 4 está acompañada por doce (12) anejos adicionales. El primer documento, Anejo 1 de la declaración, se identifica como "Tabla de facturas no trabajadas por GP Strategies". Hace referencia a cuatro (4) de las dieciséis facturas presentadas en la solicitud de sentencia sumaria e indica para cada una de las cuatro facturas: "El Sr. Julio R, Perez hizo el trabajo descrito en la factura en coordinación con COR3." Este documento no está fechado ni jurado.

18. Los documentos incluidos como Anejos 2 al 12 de la declaración presentan visitas de inspección ("site inspection reports") a diferentes localizaciones, en diferentes fechas, y tampoco contradicen partidas específicas incluidas en las facturas objeto de la Moción de Sentencia Sumaria Parcial.

19. Una comparación de todos los anejos incluidos en la oposición y la *Moción Aclaratoria* presentada por el Municipio, con los trabajos específicos incluidos en las facturas presentadas por el demandante, demuestra que no se refiere a la misma labor por la cual GP Strategies le está cobrando al Municipio. Los documentos presentados por el Municipio no contradicen, ni crean una controversia de hechos real sobre los trabajos realizados por GP Strategies que son objeto de la Moción de Sentencia Sumaria Parcial.[19]

Cónsono con estas determinaciones, identificó la siguiente controversia de derecho a resolver: si existía una disputa material en cuanto a las dieciséis (16) facturas sobre las cuales el Municipio admitió, bajo juramento, no tener observaciones al ser específicamente cuestionado sobre cuáles eran sus objeciones a las facturas presentadas por el demandante. Aplicando el derecho,

---

[19] Apéndice de la *Apelación*, Anejo VIII, págs. 865-870.

concluyó que el *Análisis de Facturas GP Strategies* presentado bajo juramento por el Municipio de Loíza admitió y confirmó parte de las alegaciones de la *Demanda* en cuanto a la existencia de una deuda válida de la que GP Strategies era acreedor y la parte apelante, deudora. Asimismo, resolvió que: (1) el Municipio de Loíza no demostró haber pagado las facturas identificadas, incluso cuando no tenía objeción real o material a las mismas; (2) el Municipio de Loíza presentó tardíamente su oposición y su moción aclaratoria con los correspondientes anejos para fundamentar correctamente la oposición; (3) la declaración del señor Pérez Maysonet no tenía valor probatorio por no estar firmada, lo cual además levantaba serios cuestionamientos sobre la juramentación ante un Notario que no se aseguró que el declarante firmara ante él, así como de la presentación del documento en el tribunal a sabiendas de que no estaba juramentado; (4) por lo anterior, la declaración no cumplía con la Regla 36.5 de Procedimiento Civil, *supra,* R. 36.5; (5) aplicando la doctrina del *sham affidavit,* procedía excluir la declaración por ser inadmisible en evidencia e irrelevante a las partidas de las facturas no objetadas; (6) aún evaluando el contenido de la declaración y los anejos que la complementan, ninguno contradijo que el personal de GP Strategies realizó el trabajo desglosado en las cuatro (4) facturas que buscó impugnar; y (7) los anejos de la declaración hacían referencia a vistas de inspección realizadas por el señor Pérez Maysonet, pero no crearon controversia sustancial que impidiera determinar que GP Strategies entregó el trabajo por el que fue contratada.

Además, el foro primario resolvió que el Municipio de Loíza hizo referencia general a una alegada prueba contenida en correos electrónicos que no se presentó durante el descubrimiento y que, según argüía, refutaba la contestación presentada bajo juramento por el oficial designado por la parte apelante en febrero de 2022.

Razonó que el Municipio de Loíza pretendía que, a poco más de un año de su contestación bajo juramento, se aceptara una oposición basada en prueba que no contradice sus propias admisiones. Por último, concluyó que la parte apelante no podía escudarse en la designación de una nueva directora de la Oficina de Programas Federales, toda vez que la alegada prueba no producida constaba en los propios expedientes de la parte, fue evaluada al preparar la contestación bajo juramento y pudo ser descubierta con un grado de diligencia razonable.

El 21 de septiembre de 2023, el Municipio de Loíza presentó una *Moción solicitando reconsideración y sobre otros extremos* en la que le solicitó al TPI que se replanteara el dictamen, así como que realizara determinaciones de hechos adicionales.[20]

El 27 de septiembre de 2023, el Municipio de Loíza radicó una *Moción suplementando moción de reconsideración de Sentencia Parcial* en la que alegó que, por inadvertencia, los anejos a su moción original estaban incompletos y suministró una copia de la declaración del señor Pérez Maysonet con su firma al pie de la última página.[21]

El 12 de octubre de 2023, GP Strategies presentó una *Oposición a Moción solicitando reconsideración y sobre otros extremos* en la que solicitó que el TPI rechazara la reconsideración, toda vez que el Municipio de Loíza no logró plantear fundamentos que ameritaran la modificación o revisión de la *Sentencia Parcial*.[22] Entre varios argumentos, esbozó que la alegada prueba ofrecida por la parte apelante estuvo en su posesión durante el descubrimiento de

---

[20] Íd., Anejo IX, págs. 885-904.
[21] Íd., Anejo X, págs. 905-908. Nótese que copia de dicha declaración jurada constaba en el expediente digital del caso en el SUMAC desde el 2 de mayo de 2023 cuando el Municipio de Loíza la sometió junto a su *Moción en oposición a Sentencia Sumaria Parcial. Véase* Entrada Núm. 56 del expediente digital del caso en el SUMAC. En ese momento, el documento no ostentaba la firma del declarante, pero aparecía con el testimonio de legitimación de firma de un notario. Esta situación resulta cuando menos irregular.
[22] Íd., Anejo XI, págs. 909-920.

prueba y el testigo estaba disponible para su utilización en la oposición a la moción de sentencia sumaria. Asimismo, disputó la presentación de la declaración del señor Pérez Maysonet con su firma, puesto que era irrefutable que el documento no fue firmado ante un notario en o antes del 1 de mayo de 2023 cuando se presentó en la oposición del Municipio de Loíza sin la firma del presunto declarante.

Ese mismo día, la parte apelada radicó una *Moción en cumplimiento de orden y en oposición a suplementación a la moción de reconsideración del Municipio* en la que solicitó que el TPI declarara No Ha Lugar la *Moción suplementando moción de reconsideración de Sentencia Parcial* por haberse presentado de forma tardía.[23]

El 13 de octubre de 2023, el TPI emitió una *Orden* en la que declaró No Ha Lugar la reconsideración.[24]

Inconforme, el Municipio de Loíza presentó la *Apelación* de epígrafe y le imputó al TPI la comisión del siguiente error:

> ERRÓ EL TPI AL PERMITIR LA PRESENTACIÓN DE LA SSSP SIN QUE LA PARTE DEMANDADA HUBIERA TERMINADO SU DESCUBRIMIENTO DE PRUEBA Y AL ENTENDER QUE LA DEUDA SEGÚN PRESENTADA POR EL DEMANDANTE ES LÍQUIDA Y EXIGIBLE

En apoyo de su contención, argumentó que GP Strategies actuó prematuramente al presentar la *Moción para solicitar Sentencia Sumaria Parcial*, interrumpió el descubrimiento de prueba y no presentó evidencia sobre todos los elementos de su reclamación. A su entender, el *Análisis de Facturas GP Strategies* sometido por el Municipio de Loíza era débil, simplista y la única prueba considerada por el foro primario. Esbozó que la admisión en dicho documento respondió a que una empleada del Municipio de Loíza

---

[23] Íd., Anejo XII, págs. 921-923.
[24] Íd., Anejo XIII, pág. 924. Notificada y archivada en autos el 16 de octubre de 2023.

preparó una tabla con varias columnas en torno a la factura, escribiendo en varias de ellas que no había ningún comentario. Ahora bien, alegó que ello no constituyó una aceptación de las facturas, sino que se trató de un solo documento del descubrimiento de prueba. Además, arguyó que el TPI no podía concluir que la expresión "sin observaciones" significaba que no existían objeciones respecto a las facturas.

Asimismo, recordó que, ante el TPI, adujo que un correo electrónico enviado el 11 de febrero de 2021 por un *Project Manager* de GP Strategies, el señor Bill Roberts (señor Roberts), quien ahora es testigo de la parte apelante, evidenciaba que se dio un proceso de revisión y reducción de facturas entre las partes. Según el Municipio de Loíza, ello era suficiente para que el TPI determinara que había controversias que ameritaban la celebración de un juicio. Para defenderse de no haber producido el testimonio del señor Roberts ante la petición de sentencia sumaria, expresó que el alegado procedimiento de reducción de las facturas encausado por las partes no era conocido por falta de documentos, pero era materia que debía explicar el testigo en su testimonio en juicio, teniendo GP Strategies la oportunidad de contrainterrogarlo. A su vez, alegó que, al momento de oponerse, no poseía declaraciones bajo juramento del señor Roberts, las cuales podrían haber utilizado en su defensa.

Por último, para subrayar la importancia del recurso, destacó que la *Sentencia Parcial* en este caso es de alto interés público, toda vez que trata sobre el proceso de contratación y facturación de trabajos efectuados por empresas, sufragados por fondos federales asignados para la restauración de ciudades afectadas por fenómenos atmosféricos. Al igual, planteó que la cuantía que se le ordenó a pagar implicaría un impacto a las debilitadas arcas de la municipalidad.

El 16 de enero de 2024, GP Strategies presentó un *Alegato de GP Strategies Corporation en oposición a la apelación* (Alegato) en el que solicitó que confirmemos la *Sentencia Parcial* apelada. En suma, argumentó dos razones independientes en apoyo de su posición: (1) que el Municipio de Loíza no siguió el procedimiento específico que provee la Regla 36.6 de Procedimiento Civil, *supra*, R. 36.6, para situaciones en las que la parte promovida por una moción de sentencia sumaria aduce que necesita descubrimiento de prueba adicional para fundamentar su oposición; y (2) que surgía del expediente que la cuantía reclamada por GP Strategies en cuanto a las dieciséis (16) facturas era líquida y exigible, no pudiendo la parte apelante demostrar que había planteamiento ni fundamento que impidiera su cobro.

Por un lado, sobre el planteamiento procesal del Municipio de Loíza, GP Strategies arguyó que era frívolo y artificioso, dado que omitió que la *Moción para solicitar Sentencia Sumaria Parcial* se fundamentó primordialmente en las propias admisiones de la parte apelante. Asimismo, señaló que se omitió en la *Apelación* que el descubrimiento de prueba escrito culminó el 14 de julio de 2023 sin que la parte apelante produjera evidencia adicional, pese a anunciarle al foro primario que tenía prueba nueva, pendiente de notificar. Ello implicaba que, incluso gozando de más tiempo para realizar el descubrimiento, el Municipio de Loíza no hubiese presentado evidencia para derrotar la moción. Aún más, planteó que la parte apelante tenía disponible la prueba que pudo utilizar para oponerse y escogió suprimirla.

Por último, respecto a los argumentos sobre la exigibilidad de la deuda relacionada a las dieciséis (16) facturas, adujo que el correo electrónico del 11 de febrero de 2021 antecedió por un año el *Análisis de Facturas GP Strategies* en el que el Municipio de Loíza tuvo la oportunidad de objetar las facturas presentadas por la parte

apelada, disputando dieciocho (18) de las facturas y expresando "sin observaciones" a las restantes dieciséis (16). En adición, planteó que el contenido del correo no hizo referencia a las facturas reclamadas, de forma que se pudieran deducir controversias sobre ellas.

En adelante, evaluaremos las normas jurídicas atinentes a los errores planteados por la parte apelante.

**III.**

**A.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. ***Rodríguez García v. UCA***, 200 DPR 929, 940 (2018); ***Bobé et al. v. UBS Financial Services***, 198 DPR 6, 20 (2017); ***SLG Zapata-Rivera v. J.F. Montalvo***, 189 DPR 414, 430 (2013). Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta. De esta forma se promueve la descongestión de calendarios, así como la pronta adjudicación de controversias cuando una audiencia formal resulta en una dilación innecesaria. ***Vera v. Dr. Bravo***, 161 DPR 308, 331-332 (2004).

Ahora bien, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que **sean claros**; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. ***PFZ Props., Inc. v. Gen. Acc. Ins. Co.***, 136 DPR 881, 911-912 (1994). Asimismo, al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en

corte. **León Torres v. Rivera Lebrón,** 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. **Meléndez González et al. v. M. Cuebas**, 193 DPR 100, 138 (2015); **Ramos Pérez v. Univisión**, 178 DPR 200, 216-217 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. **Meléndez González et al. v. M. Cuebas**, supra, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. **Ramos Pérez v. Univisión**, supra, pág. 213. La controversia sobre el hecho material debe ser real. Íd. A saber:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. *Íd.,* págs. 213-214 *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real

en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas*, supra. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. Íd., citando a *Ramos Pérez v. Univisión,* supra, pág. 214. De esta manera, central entre las responsabilidades de la parte promovida se encuentra que debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. *León Torres v. Rivera Lebrón,* supra. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". Íd. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *SLG Zapata-Rivera v. JF Montalvo*, supra; *Ramos Pérez v. Univisión*, supra, pág. 215; *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007). Lo anterior, además, es cónsono con los requerimientos establecidos por las Reglas de Procedimiento Civil, supra, en lo pertinente a este mecanismo procesal.

En síntesis, ha quedado establecido que los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) cuando surge de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no procede como cuestión de Derecho. *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

En materia estrictamente procesal, de acuerdo con las Reglas 36.1 y 36.2 de Procedimiento Civil, *supra*, R. 36.1 & 36.2, el

promovente de la moción de sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la controversia. Específicamente, la Regla 36.1 de Procedimiento Civil, *supra*, prescribe el momento en que una parte reclamante puede solicitar una sentencia sumaria a su favor, estableciendo lo siguiente:

> Una parte que solicite un remedio podrá presentar, en cualquier momento después de haber transcurrido veinte (20) días a partir de la fecha en que se emplaza a la parte demandada, o después que la parte contraria le haya notificado una moción de sentencia sumaria, pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada.

En cambio, la Regla 36.2 de Procedimiento Civil, *supra*, regula el momento en que una parte contra quien se reclama solicita el remedio de la sentencia sumaria, disponiendo lo siguiente:

> Una parte contra la cual se haya formulado una reclamación podrá presentar, a partir de la fecha en que fue emplazado pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

Entretanto, la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida. Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3(a) de Procedimiento Civil, *supra*, R. 36.3(a), dispone que tendrá que desglosar lo siguiente:

> (1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;

(4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y

(6) el remedio que debe ser concedido.

Mientras tanto, la Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b) prescribe que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.

A estas disposiciones, la Regla 36.3(c) de Procedimiento Civil, *supra*, R. 36.3(c) añade que, cuando se presente una moción solicitando sentencia sumaria y se sostenga conforme a la Regla 36, *supra*, la parte promovida no podrá descansar únicamente en las aseveraciones contenidas en sus alegaciones. Por el contrario, estará obligada a contestar tan detallada y específicamente como lo haya hecho la parte promovente de la moción. De no hacerlo, la referida Regla prescribe que se dictará la sentencia sumaria en su contra, si procede.

En adición, las Reglas 36.5 y R. 36.6 de Procedimiento Civil, *supra*, R. 36.5 & R. 36.6, reglamentan varios aspectos de las declaraciones juradas que acompañarán las mociones solicitando sentencia sumaria. Por un lado, la Regla 36.5, *supra*, establece que las declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal de la persona declarante y que contendrán los hechos que serían admisibles en evidencia y

demostrarán afirmativamente que la persona declarante esta cualificada para testificar en cuanto a su contenido. Asimismo, prescribe que "[c]opias juradas o certificadas de todos los documentos, o de partes de éstos en que se haga referencia en una declaración jurada, deberán unirse a la declaración o notificarse junto con ésta". Íd. Por otro lado, la Regla 36.6, *supra*, instituye el mecanismo a seguir cuando no puedan obtenerse declaraciones juradas. Al respecto, decreta que, si de las declaraciones juradas de la parte que se oponga a la moción resulta que no puede presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, entonces el tribunal podrá denegar la solicitud de sentencia sumaria o posponer su consideración. En dicho caso, el foro primario podrá dictar cualquier orden que entienda justa y le concederá a la parte promovida un término razonable para obtener declaraciones juradas, tomar deposiciones o conseguir que la parte contraria le facilite cierta evidencia.

De otra parte, en ***Meléndez González et al. v. M. Cuebas***, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, y los criterios que la jurisprudencia le exige al foro primario. Íd., pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Íd. Ahora bien, reconoció que el foro apelativo esta limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron

ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. Íd.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. Íd.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. Íd., pág. 119.

**B.**

En **SLG Zapata-Rivera v. J.F. Montalvo,** supra, nuestro Tribunal Supremo importó la doctrina del *sham affidavit,* cuyo origen se remonta a determinaciones de los tribunales apelativos federales acogida en la mayoría de los estados. En virtud de esta doctrina, se impide que una parte intente crear una controversia de hechos materiales utilizando un testimonio reciente que contradice una previa declaración bajo juramento si no se provee una explicación para la contradicción. **SLG Zapata-Rivera v. J.F. Montalvo,** supra, pág. 439. Por ello, el juzgador no podrá considerar una declaración jurada provista por la parte promovida si su contenido es claramente incompatible con una versión de los hechos provista anteriormente y quien la presenta no aclara la discrepancia. Íd., pág. 440. Es decir, el tribunal rechazará una declaración jurada

posterior si la inconsistencia entre las dos declaraciones resulta evidente y no hay una explicación adecuada para la nueva versión. Íd. En esa ocasión, nuestro más alto foro aplicó la doctrina ante un demandante que omitió hechos materiales y esenciales a su causa de acción en sus respuestas vertidas en una deposición, pero luego, en oposición a una moción solicitando sentencia sumaria, reveló los hechos a través de una declaración jurada.

Posteriormente, en *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209 (2015), se desarrolló aún más la doctrina del *sham affidavit.* En esa ocasión, se aplicó la doctrina en su modalidad de contradicción a un demandante que para oponerse a una moción de sentencia sumaria presentó una declaración jurada totalmente contraria a su testimonio en una deposición. Esta modalidad aplica cuando:

> (1) una parte ha sido examinada mediante preguntas precisas y libres de ambigüedad y ha respondido en detalle durante una deposición o ha prestado previamente una declaración clara e inequívoca bajo juramento; (2) al momento de oponerse a la solicitud de sentencia sumaria esa parte presenta una declaración posterior cuyo contenido es claramente incompatible con la versión ofrecida; (3) la incompatibilidad entre las dos declaraciones resulta evidente, manifiesta o patente, y no se trata de meras discrepancias de poca transcendencia o errores de buena fe; (4) no se ofrece explicación adecuada para la nueva versión, y (5) la declaración posterior no responde al descubrimiento de nueva evidencia, la cual a pesar de una diligencia razonable, no pudo descubrirse o no estuvo disponible al momento en que se prestó la declaración previa incompatible. Íd., págs. 221-222.

Ahora bien, en cuanto a los últimos dos requisitos, el tribunal deberá permitir que el proponente de la declaración jurada ofrezca una explicación adecuada para la nueva versión, la cual no puede descansar en meras ambigüedades o planteamientos estereotipados. Íd., pág. 222. Esto último responde a que la parte que ha declarado bajo juramento tiene una carga considerable cuando intenta deshacerse de esa declaración anterior. Íd.

Por último, cabe destacar que, en *Lugo Montalvo v. Sol Meliá Vacation,* supra, nuestro más alto foro consideró el momento en

que la declaración jurada fue preparada – cuatro (4) días antes de presentar la oposición – como elemento indicativo adicional de que la declaración jurada fue elaborada con la intención de crear una controversia artificial. Íd., pág. 224.

**C.**

De ordinario, en la reclamación sobre cobro de dinero, el demandante solo tiene que probar que: (1) existe una deuda válida, (2) la deuda no se ha pagado; (3) el demandante es el acreedor; y (4) la parte demandada es la deudora. ***Gen. Elec. v. Concessionaries, Inc.,*** 118 DPR 32, 43 (1986).

En cuanto a la deuda, es necesario demostrar que la misma es líquida, vencida y exigible. ***Ramos y otros v. Colón y otros****,* 153 DPR 534, 546 (2001). Dentro de este marco, una deuda es líquida cuando la cantidad debida es cierta y determinada. Íd. Es decir, cuando se conoce la cuantía que se debe. Asimismo, es exigible y vencida cuando debe ser satisfecha por la naturaleza de la obligación o por requerimiento del acreedor. Véase ***Guadalupe v. Rodríguez,*** 70 DPR 958, 966 (1950).

**IV.**

En el caso de marras, el TPI dictó una *Sentencia Parcial* en la que le ordenó al Municipio de Loíza a pagar $369,126.00, el total de dieciséis (16) facturas de un total de treinta y cuatro (34) facturas adeudadas a GP Strategies sobre las cuales concluyó que no había controversia. El foro primario basó su determinación en que la parte apelante admitió que no tenía objeciones respecto a dichas facturas en un documento titulado *Análisis de Facturas GP Strategies*, el cual suministró bajo juramento en respuesta a un interrogatorio al amparo de la Regla 30 de Procedimiento Civil, *supra,* R. 30. En lo pertinente, concluyó que el Municipio de Loíza no demostró que pagó las facturas y no le otorgó valor probatorio a la declaración del señor Pérez Maysonet que presentó el Municipio de Loíza en

oposición a la moción de sentencia sumaria por <u>no estar firmada</u>, no cumplir con la Regla 36.5 de Procedimiento Civil, *supra,* y por tratarse de un *sham affidavit.* Además, coligió que, incluso evaluando su contenido y anejos, la declaración no contradecía los hechos materiales que la parte apelante pretendía impugnar. También, formuló diecinueve (19) determinaciones de hechos que, examinado el expediente en su totalidad, se sostienen por la evidencia que obra en él.

En desacuerdo, el Municipio de Loíza le imputó al foro primario la comisión de un error, divisible en dos partes.

Por un lado, arguyó que el TPI erró al dictar la *Sentencia Parcial* sin que la parte apelante pudiera terminar su descubrimiento de prueba, en violación del debido proceso de ley. Es su posición que GP Strategies presentó su solicitud de sentencia sumaria prematuramente e interrumpió el descubrimiento de prueba. Según expuso, la determinación fue tomada a espaldas de la casuística sobre los requisitos formales que debe observar el gobierno local y estatal para contratar servicios profesionales. Sin embargo, no adujo cuáles preceptos específicos fueron violados o ignorados, sino que se limitó a mencionar que la *Sentencia Parcial* es de alto interés público por tratarse de fondos federales asignados para la reconstrucción tras eventos atmosféricos y de las debilitadas arcas del Municipio de Loíza.

En un intento de sumar a ese planteamiento, la parte apelante recalcó que presentó el correo electrónico del 11 de febrero de 2021, enviado por el señor Roberts en el que expresaba que la compañía había revisado y reducido las facturas considerablemente y, por ello, invitaba al recipiente a revisarlas en una fecha posterior. Adujo que el señor Roberts era testigo del Municipio de Loíza y podía aportar su testimonio en un juicio en su fondo, pero que al oponerse a la moción de sentencia sumaria no contaban con su declaración bajo

juramento. Según la parte apelante, esa situación era suficiente para que el TPI determinara que existía controversia sobre la cuantía de las facturas. No obstante, pese a la alegada insuficiencia de declaraciones juradas para oponerse efectivamente, el Municipio de Loíza no presentó moción ni declaración alguna al amparo de la Regla 36.6 de Procedimiento Civil, *supra.*

Por otro lado, planteó que el TPI erró al entender que la deuda según presentada por GP Strategies era líquida y exigible. Es su contención que la prueba presentada por la parte apelada en apoyo de su solicitud de sentencia sumaria, el *Análisis de Facturas GP Strategies,* era una prueba débil y simplista, y que la alegada admisión contenida en ella no constituyó una aceptación de las facturas. Según arguyó, no procedía concluir que "sin observaciones" significaba que no existían objeciones en cuanto a las referidas facturas. En suma, la posición del Municipio de Loíza sigue la siguiente tesis: si existe controversia sobre la cuantía de las facturas, entonces las facturas no representan una deuda líquida y exigible.

En defensa de la *Sentencia Parcial,* GP Strategies ofreció dos razones independientes: por un lado, que la parte apelante no siguió el procedimiento específico establecido por la Regla 36.6 de Procedimiento Civil, *supra,* y, por el otro, que la cuantía total de las dieciséis facturas sobre las que no había controversia era líquida y exigible. Como eje central de su argumento planteó que la *Moción para solicitar Sentencia Sumaria Parcial* se fundamentó correctamente en las propias admisiones bajo juramento de la parte apelante y, en contraste, que el correo electrónico del señor Roberts precedió dichas admisiones por cerca de un año y su contenido no demuestra lo que se alegó. Por último, llamó la atención al suceso procesal de que el descubrimiento de prueba escrito culminó el 14 de julio de 2023 y la parte apelante no produjo evidencia adicional,

pese a prometer que lo haría. Por ello, arguyó que, incluso si hubiese tenido más tiempo, el Municipio de Loíza no hubiese presentado evidencia para derrotar la moción de sentencia sumaria y que, además, poseía la prueba que hoy alega que le hacía falta para oponerse, pero escogió suprimirla.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica apelativa adjudicativa, resulta forzoso concluir que el TPI no incidió en el error señalado. La determinación sumaria apelada fue correcta tanto procesalmente como en derecho.

Como asunto de umbral, nuestro análisis del caso es *de novo* y desde la misma posición en la que se encontró el foro primario. Por ello, como nuestra encomienda nos exige la más completa revisión del expediente en su totalidad, expondremos el análisis que motiva nuestra conclusión.

Como parte de su contestación al *Primer pliego de interrogatorios, requerimiento de admisiones y solicitud de producción de documentos* sometido por GP Strategies, el cual exigía que se precisaran las partidas objetadas de cada una de las facturas cuyo pago se reclamó, el Municipio de Loíza incluyó el *Análisis de Facturas GP Strategies*. De un estudio del documento surge palmariamente que contiene una relación de las treinta y cuatro (34) facturas objeto de la *Demanda* con detalle del período en el que fueron emitidas, el total adeudado, el cargo disputado y los comentarios de la parte apelante. Ello, tal y como se anunció en el párrafo quince de la contestación al interrogatorio. Entre los comentarios que ostentan las facturas se pueden encontrar: "Cantidad de horas facturadas no guarda proporción con trabajo facturado según descrito – 4 hrs – timesheets for co-workers? Working on drive documents – projects?";[25] "La facturación no

---

[25] Apéndice de la *Apelación*, Anejo III, pág. 602.

corresponde al trabajo rendido. Descripciones tareas ambiguas, repetitivas y duplicadas con otros de sus propios empleados";[26] y "no se puede validar su labor".[27] En cambio, en las facturas 10, 15, 18, 19, 20, 21, 22, 24, 25, 26, 29, 30, 31, 32, 33, y 34, se consignó: "[s]in observaciones". Es a raíz de esa contestación bajo juramento que GP Strategies promovió la moción de sentencia sumaria y que el TPI consideró que no existía controversia sobre un hecho medular a la causa de acción de cobro de dinero: que el Municipio de Loíza no tenía objeción respecto a las dieciséis (16) facturas como sí la tuvo respecto a las demás facturas. Ese hecho se desprende directamente del documento *Análisis de Facturas GP Strategies*. Ninguno de los planteamientos del Municipio de Loíza nos convence de lo contrario.

Por un lado, como parte de su oposición a la *Moción para solicitar Sentencia Sumaria Parcial*, el Municipio de Loíza presentó una declaración jurada <u>no firmada</u> del señor Pérez Maysonet, en la que se afirmaba que los trabajos descritos en las últimas cuatro facturas sometidas por GP Strategies habían sido realizados por el declarante. La declaración tenía fecha del 1 de mayo de 2023 y contaba con la legitimación de firma de un notario. Además de no poderse considerar por no estar firmada, esta declaración es, a todas luces, un *sham affidavit* y por ello debe ser excluida. Para el momento en que se presentó, resulta evidente que: (1) el Municipio de Loíza había prestado previamente una declaración clara e inequívoca bajo juramento en su contestación al interrogatorio y el *Análisis de Facturas GP Strategies* que la acompañó; (2) al oponerse a la solicitud de sentencia sumaria, presentó la declaración del señor Pérez Maysonet, cuyo contenido es claramente incompatible con la expresión anterior; (3) dicha incompatibilidad entre ambas es

---

[26] Íd.
[27] Íd., pág. 603.

evidente, dado que la declaración posterior intentó poner en duda los comentarios admitidos en el *Análisis de Facturas GP Strategies*; (4) las explicaciones contenidas en la propia declaración y las ofrecidas posteriormente por el Municipio de Loíza no son adecuadas; y (5) la declaración posterior no respondió a descubrimiento de nueva evidencia que no pudo descubrirse previamente, puesto que el señor Pérez Maysonet estuvo disponible para la parte en todo momento y el documento fue preparado por la persona con autoridad y conocimiento personal para expresar su contenido. Más aún, la fecha de la preparación de la declaración – el mismo día en que se vencía el término para presentar la oposición a la *Moción para solicitar Sentencia Sumaria Parcial* – suma otro elemento indicativo de que la misma fue elaborada con la intención de crear una controversia artificial. Aún más, en todo caso, la declaración únicamente iba dirigida a disputar las últimas cuatro facturas y el contenido de los documentos consistía en recibos de inspección que no demostrarían que GP Strategies no llevó a cabo el trabajo para el que fue contratado. Visto de este modo, el TPI estuvo correcto en excluir la declaración por tratarse de un *sham affidavit*, así como en restarle todo valor probatorio por la falta de la firma del declarante.

Por otro lado, posterior a la presentación de la oposición, el Municipio de Loíza radicó varios documentos que había omitido previamente. Entre ellos, incluyó el correo electrónico del 11 de febrero de 2021 enviado por el señor Bill Roberts que según esbozó demostraba que entre las partes se dio un proceso de revisión y reducción de las facturas. La expresión contenida en dicho documento era la siguiente: "[...] we have gone through the invoices and dropped them considerably. Can we get together tomorrow or early next week to review. Please let me know how your schedule

looks".[28] En primer lugar, el correo precede la admisión bajo juramento del Municipio de Loíza en cuanto a su falta de observaciones respecto a las dieciséis (16) facturas. Las expresiones contenidas en una contestación a un interrogatorio sometido a la otra parte en virtud de la Regla 30 de Procedimiento Civil, *supra*, constituyen admisiones de las partes que la suscriben. En segundo lugar, la expresión contenida en el documento no hace referencia específica a ninguna de las facturas. De lo anterior resulta imperativo colegir que el correo electrónico no produce controversia sobre los hechos propuestos por la parte apelada como incontrovertidos y considerados de esa forma por el TPI.

Derrotados los argumentos en contra de los hechos materiales considerados por el foro primario como incontrovertidos, surge palmariamente que se configuraron los elementos de la causa de acción de cobro de dinero, promovida por GP Strategies. Lo que las dieciséis (16) facturas no objetadas y admitidas como correctas bajo juramento demuestran es que existe una deuda válida de $369,126.00, que la misma no se ha pagado, que GP Strategies es su acreedora y que el Municipio de Loíza es su deudor. La deuda es líquida porque la cantidad debida es cierta y determinada, conforme al expediente del caso y las facturas que obran en él. De ello se desprende además que la deuda está vencida y es exigible. Es por ello por lo que el foro primario no erró al dictar *Sentencia Parcial* ordenando la satisfacción de la misma.

Por todo lo anterior, corresponde confirmar la *Sentencia Parcial* apelada. El Municipio de Loíza está obligado a pagar la deuda según lo ordenó el ilustrado foro primario.

---

[28] Íd., pág. 837.

## V.

Por los fundamentos pormenorizados, se *confirma* la *Sentencia Parcial* apelada.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


                              Lcda. Lilia M. Oquendo Solís
                          Secretaria del Tribunal de Apelaciones